UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
The Honorable Mary K. Dimke

| | |
|---|---|
| United States of America,<br><br>                              Plaintiff,<br><br>      v.<br><br>Christopher Lee Osborn,<br><br>                              Defendant. | No.  1:22-CR-2096-MKD<br><br>**Sentencing Memorandum**<br><br>**Sentencing**<br>**February 6, 2024, 1:30 p.m.**<br>**Yakima, Washington** |

Christopher Lee Osborn comes before this Court for sentencing for distribution of child pornography, the third in a series of acts relating to child pornography between January 2020 and April 2021. Mr. Osborn is also concurrently charged with offenses in Yakima County Superior Court in relation to the first and second acts in that same period. Mr. Osborn has negotiated a global plea agreement wherein he has pled guilty to charges in all three cases, including this one.[1] It is anticipated Mr. Osborn will receive a sentence of between 77-102 months in his state cases, and the parties have agreed the appropriate sentence in his federal case would be 60-96 months.[2] This plea agreement is entered into under Federal Rule of Criminal Procedure 11(c)(1)(C), and also contains a limited right of appeal.[3]

---

[1] *See* ECF 83.
[2] *See id.* at pp. 9-11.
[3] *See id.* at pp. 4-5, 19.

Sentencing Memorandum:  1

Mr. Osborn respectfully requests a sentence in this case equal and concurrent to what he receives in Yakima County,[4] but no higher than 96 months' imprisonment, followed by at least 5 years of supervised release. At this time, no requests for restitution have been received or provided to counsel. The Court must impose the mandatory $100 special penalty assessment but should impose no additional special assessments[5] or fines.

### Factual and Procedural History

The investigations against Mr. Osborn date back to January 2020, when a NCMEC tip identified potential child pornography activity on the IP address at the house Mr. Osborn resided at. Mr. Osborn was initially arrested on September 15, 2020, following execution of a search warrant at the house. He was released the same day pending a forensic examination of his devices, but arrested again just two days later when formal charges were filed.[6] Mr. Osborn was released again the next day subject to a $25,000 bond and release conditions.

Mr. Osborn was arrested again on April 16, 2021, during execution of a second search warrant at the same house. It appears he was released in short order and remained out of custody until new charges were filed in November 2021.[7] Mr. Osborn

---

[4] Mr. Osborn is set be sentenced in his Yakima County cases on January 24, 2024.
[5] Regarding the $5,000 Justice for Victims of Trafficking Assessment, Mr. Osborn should be found indigent, and thus this assessment should not be imposed.
[6] These are the charges filed in Yakima County Superior Court #20-1-01473-39.
[7] These are the charges filed in Yakima County Superior Court #21-1-01864-39.

was then arrested, arraigned, and again released on conditions, including a $100,000 bond. Mr. Osborn remained out of custody until September 16, 2022, at which time he was arrested on the federal warrant issued in this case following his indictment three days prior.[8]

This Court detained Mr. Osborn despite his prior release to pretrial custody in state court.[9] Following a total of three motions to reopen, the Court ultimately released Mr. Osborn subject to GPS location monitoring and home detention, along with other conditions.[10] Unfortunately, in short order Mr. Osborn violated the terms of his pretrial release and absconded from supervision.[11] After being located and arrested on December 27, 2022,[12] he was remanded to custody and has remained in custody since.[13]

Following extensive negotiations with Yakima County and the United States, Mr. Osborn pled guilty pursuant to a written global plea agreement.[14] Mr. Osborn agreed to plead guilty in certain charges in all three of his pending cases, essentially admitting to three "strikes" for purposes of future potential prosecutions. Mr. Osborn has pled guilty in both state and federal court. He is set to be sentenced in state court on January 24, 2024. Sentencing in this Court is set for February 6, 2024.

---

[8] *See* ECF 1, 12.
[9] *See* ECF 19.
[10] *See* ECF 24, 30, 43, and 44.
[11] *See* ECF 45, 56.
[12] *See* ECF 57.
[13] *See* ECF 60.
[14] *See* ECF 83.

Sentencing Memorandum:  3

**Advisory U.S.S.G. Range, Impact of Plea Agreement**

The calculated advisory guideline range in the draft presentence investigation report is 151-188 months, based on a total offense level of 34 and criminal history category of I. Mr. Osborn has no objection to these calculations.

The written plea agreement resolving his state and federal cases contains two ranges. First, the state anticipates his guideline range in their cases will be 77-102 months.[15] Notably, barring certain circumstances, state guideline ranges are mandatory. Moreover, the state has agreed to recommend a sentence of 96 months' imprisonment. Second, the United States and Mr. Osborn have agreed pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that the appropriate sentence in this case should be between 60 and 96 months' imprisonment, run concurrent with his state sentences.[16] This agreed range is binding if the Court accepts the plea agreement. Should the Court reject this agreed range (only possible if the Court intends to sentence him to more than 96 months, as the low-end coincides with the statutory mandatory minimum), Mr. Osborn has a right to withdraw from the plea and a limited right to appeal a sentence above the high-end of the guideline range.[17]

---

[15] *See* ECF 83 at p. 9.
[16] *See* ECF 83 at pp. 10-11.
[17] *See* ECF 83 at pp. 4-5, 19.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**Position on Sentencing**

Mr. Osborn is a complex person to understand. He claims to have had a "decent" childhood with no abuse within the home, but also notes he suffered from a variety of mental issues from a young age. Mr. Osborn claims he was sexually abused as an infant by his aunt's boyfriend (which he did not find out until he was an adult) and again at age 12-13 by a female several years older than him. He was placed in special education courses in school, dropped out in the eighth grade, and was awarded Social Security Disability Insurance when he was 18 years old. Mr. Osborn has a significant history of alcohol and marijuana use, along with some history of methamphetamine use. There appear to be numerous programs and resources that would benefit him both in federal prison and on supervised release.

Prior to the investigation that led to his charges here and in Yakima County, he had one prior conviction for driving without a license and two prior cases that both resulted in diversion and dismissals. Mr. Osborn has no history of violence or hands-on sex offenses. Thus, prior to the initial investigation relating to child pornography that began in January 2020, Mr. Osborn would have presented as someone with a relatively insignificant criminal history and low risk of recidivism.

The advisory guideline range in this case is quite substantial. Mr. Osborn is subject to a combined 13 levels' worth of enhancements for the age of the victims, the use of a computer (which includes cell phones), and the number of images.[18] Three of those four enhancements apply in more than 95% of all distribution cases, while the fourth applies in nearly 90% of such cases.[19] Additionally, despite being convicted of distribution of child pornography (which carries a heightened base offense level), Mr. Osborn also receives a 2-level enhancement for knowingly engaging in distribution.[20] Thus, all of the 15 levels of enhancements are either already inherent to Mr. Osborn's conduct or present in the vast majority of similar cases.

Given the above, the U.S. Sentencing Commission has found that the Guidelines "fail[] to distinguish adequately between more and less severe offenders."[21] This provides some explanation for why less than one-third of persons convicted of possession offenses received a sentence within their guideline range while more than half received a variance below the guidelines.[22] The Commission has advised, as it has for more than a decade, that the Guidelines be amended to incorporate different factors

---

[18] *See* ECF 88 at p. 11.

[19] *See* United States Sentencing Commission, "Federal Sentence of Child Pornography: Non-Production Offenses," at p. 19 (June 2021), *available at:* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf.

[20] *See* ECF 88 at p. 11. Had Mr. Osborn not "knowingly" engaged in distribution, the United States likely could not have proven him guilty of this offense.

[21] United States Sentencing Commission, "Federal Sentence of Child Pornography: Non-Production Offenses," at p. 19

[22] *See id.* at p. 23.

that would more meaningfully distinguish between more culpable and less culpable child pornography offenders.[23] One such factor the Commission has suggested is whether the person has a history (in the instant case or prior) of hands-on sexual conduct offenses.[24] Mr. Osborn has no such history.

Returning to recidivism, the general rate of recidivism for child pornography offenders is only 27.6%, per one USSC study.[25] Of those who do re-offend, the vast majority do so for "administration of justice" offenses[26] or failure to register as a sex offender. Less than 5% of the study population were arrested for either contact or non-contact sex offenses.[27] While the Court may point to Mr. Osborn having committed separate acts that are leading to three separate convictions over a period of sixteen months, it does not appear that Mr. Osborn had the benefit of any substance abuse or sex offender treatment during this investigation or his extensive periods on state pretrial release. Hopefully after he serves what will be a significant prison sentence and avails himself of treatment, Mr. Osborn will be able to avoid future similar behavior.

---

[23] *See id.* at pp. 68-69.

[24] *See id.* at p. 69.

[25] *See* United States Sentencing Commission, "Federal Sentence of Child Pornography: Non-Production Offenses," at p. 65.

[26] These offenses include contempt of court, failure to appear, obstruction of justice, escape, prison contraband, and probation/parole violations, all excluding failure to register. *See id.* at p. 65 n. 145.

[27] *See id.* at p. 65.

Sentencing Memorandum:  7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

The Bureau of Prisons "recognizes sex offenders as a vulnerable population within a prison setting."[28] Vulnerable there of course means vulnerable to attacks by others. The Bureau of Prisons has several policies in place aimed at ensuring their safety and avoiding "the need to place sexual offenders in protective custody."[29] The fact that the Bureau publicly recognizes the vulnerability of sex offenders in their custody and has had policies in place for many years intended to address that vulnerability should inform the Court about the seriousness of the proposed sentence in this case. Even a below-Guidelines sentence of 60-96 months will be more serious and stressful on Mr. Osborn because of the nature of his offense. He hopes to avoid conflicts while in prison, but such conflicts may inevitably be forced upon him.

Mr. Osborn intends to request a designation to FCI Englewood, a facility where sex offender treatment is available. He intends to enroll in and complete all available sex offender treatment while in federal custody. Given the anticipated length of the sentence to be imposed, Mr. Osborn also hopes to further his education, including obtaining his GED. While Mr. Osborn can only work part time due to his SSI Disability, he also intends to enroll in vocational training to increase his employability when he is released from prison.

---

[28] Bureau of Prisons, "Custody and Care: Sex Offenders," *available at:* https://www.bop.gov/inmates/custody_and_care/sex_offenders.jsp.

[29] Bureau of Prisons, "Program Statement: Sex Offender Programs," at p. 4 (revised 2/15/2023), *available at:* https://www.bop.gov/policy/progstat/5324_010.pdf.

Mr. Osborn will be subject to at least 5 years of supervised release after he gets out of prison, and likely a much longer term than the minimum. His supervision will be subject to numerous strict conditions that will more than adequately ensure he does not engage in any inappropriate behavior. The key to Mr. Osborn turning his life around once he gets out of prison will be engaging in treatment and abiding by his conditions of release. He has show through two prior diversion cases that he is capable of comply with court directives. Mr. Osborn hopes the Court will conclude that a sentence of no more than 96 months, coupled with restrictive supervised release, will be sufficient and not greater than necessary to accomplish the goals of sentencing.

One final point—Mr. Osborn is pleading guilty not just in his federal case, but also in both of his state cases. That was an intentional and deliberate result of negotiations with the United States and Yakima County. To avoid the possibility of significantly more prison time in his cases, Mr. Osborn agreed to plead to what amounts to three "strikes" for purposes of future prosecution. Should Mr. Osborn commit any new criminal offenses in the future, having these particular convictions will greatly enhance his criminal history, guideline ranges, and in many cases trigger significant mandatory minimums. For sexual offenses in particular, having these prior convictions will again result in significant mandatory minimums for recidivism. Mr. Osborn is aware of that and was willing to enter into this plea because he fully intends to avoid any further criminal conduct when released from prison.

**CONCLUSION**

For the reasons set forth herein, Mr. Osborn requests a jail sentence equal to and concurrent with whatever he receives in Yakima County but in no event higher than 96 months' imprisonment. Mr. Osborn further requests a term of at least 5 years of supervised release. This Court should not order any restitution absent a timely submission or request. This Court must impose the $100 mandatory special assessment but should impose no additional special assessments or fines.

Dated:  January 17, 2024

By s/ Paul Shelton
Paul Shelton, 52337
Federal Defenders of Eastern
Washington and Idaho
306 East Chestnut Avenue
Yakima, Washington 98901
(509) 248-8920
(509) 248-9118 fax
Paul_Shelton@fd.org

## Certificate of Service

I hereby certify that on January 22, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following: Michael Murphy, Assistant United States Attorney.

s/ Paul Shelton
Paul Shelton

Sentencing Memorandum:  11